## THE ROCKAWAY.

## THE INTERNATIONAL.

### (District Court, S. D. New York. June 4, 1889.)

COLLISION—BETWEEN STEAMERS—FAILURE TO ANSWER SIGNAL—DUTY TO STOP CROSSING COURSE.

The steam-lighter I., going up the East river near the New York shore, came in collision, near Eighth-Street dock, with the ferry-boat R., bound from Hunter's Point to the Seventh-Street slip, and having the right of way. The R. three times gave a signal of one whistle, when off Thirteenth street, Twelfth street, and Eleventh street, and got no answer until off Eleventh street, when she received a signal of two whistles from the I., which attempted to go near the shore, and the two collided, port bow to port bow. *Held*, both in fault; the I. for crossing the R.'s' course, and keeping to the left, near the shore, without reason; the R. for not backing sooner, under inspector's rule 3, or as soon as the I.'s intent was made known.

In Admiralty. Cross-libels for damages by collision.
*A. B. Stewart*, for the International.
*Rice & Bijur*, for the Rockaway.

BROWN, J. The above are cross-libels, brought by the owners of the lighter International and the ferry-boat Rockaway, to recover their respective damages through a collision that occurred between them a little before 8 o'clock A. M., on March 16, 1886, about 100 feet off the foot of Eighth street. The Rockaway was bound down river from Hunter's Point to her slip at Seventh street; the International was bound up river from pier 9 to Port Morris. The morning being foggy, she kept close along the New York shore. But I find that for 10 minutes before this collision, and from the time the Rockaway left Hunter's Point, the fog had cleared, so as not to cause any embarrassment to navigation. The International maintained her place, however, close along the shore, without justification and in violation of the state statute that required her to go in mid-river. This course was also an embarrassment to the Rockaway in approaching her slip; and, the International having persisted in this course by a signal of two whistles to cross the bows of the Rockaway as she approached her slip, and without any assenting response, she must be held in fault. The Rockaway, however, does not satisfy me that she is free from blame in not stopping earlier than she did. When the Inter-

national was off Third or Fourth street, and the Rockaway some 600 feet off Thirteenth street, the latter gave a signal of one whistle to which she got no answer. She repeated it when off Twelfth street, with no answer; and again when off Eleventh street, when for the first time she received an answer of two whistles, indicating that the International meant to cross her bows, and keep in shore, towards which she was already somewhat heading. By this time the Rockaway had already drawn in about a point towards the New York shore, and was heading about for her slip. The Rockaway thereafter stopped and backed, and gave one long whistle, and kept her course. She passed along the Ninth-Street pier only about 100 feet distant from it, heading inwards towards her Seventh-Street slip; and the collision off Eighth street was about on a line with the end of the longer Ninth-Street pier. The Rockaway claims to have been stopped in the water at the time of the collision, and that the International could have passed clear, to the westward, had she not put her wheel to port, as is alleged, just before the collision, which brought her port bow against the port bow of the Rockaway. The witnesses of the International deny any porting, and claim that the change of the stem was the effect of her propeller in backing. The case, as respects the fault of the Rockaway, is essentially the same as those of *The Columbia*, 25 Fed. Rep. 844; *The Fanwood*, 28 Fed. Rep. 373; and *The Baltimore and Catskill*, 34 Fed. Rep. 660, affirmed *ante*, 367. The intent of the International to cross the line of the Rockaway's course, and to put herself on the Rockaway's starboard side, was shown in the clearest possible way. This was plain from the International's signal when the Rockaway was off Eleventh street, and the International off Seventh street, or a little below; *i. e.*, at least 1,000 feet distant. Even before that the Rockaway was in fault for not checking her speed in accordance with the requirement of the inspector's rule 3, when she got no answer to two different signals given to the International. This was directly affirmed by Mr. Justice BLATCHFORD in the case of *The Columbia*, *supra*, 845. But on hearing the two blasts from the International, showing that she meant to go to the left, in answer to the Rockaway's third signal, the danger of collision was manifest, and the Rockaway was bound under rule 21 at once to stop and reverse, or else to pass to the left, which she might in fact have done without difficulty or danger. Though the International was in fault in being where she was, the Rockaway had no right to run into collision, when there was no difficulty in avoiding it in either of the ways mentioned. As the collision occurred off Eighth street, it is very certain that the Rockaway did not reverse for a considerable time after she got the two whistles from the International. She was then about 800 feet from the place of collision; while she could stop, as the testimony shows, in going half that distance, (the captain says, in much less than that.) The testimony indicates that she did not back till below Tenth street, probably when near Ninth street. The duty of the vessel having the so-called "right of way" to stop and back in time, under such circumstances, has been often decided in other cases besides those above mentioned. *The Scuff*, 32 Fed. Rep. 237; *The*

*J. S. Darcy*, 29 Fed. Rep. 644; *The Non Pareille*, 33 Fed. Rep. 524; *The Alaska*, 27 Fed. Rep. 704, affirmed 33 Fed. Rep. 107; *The Aurania*, 29 Fed. Rep. 98, 124; *The Tasmania*, L. R. 14 Prob. Div. 53. The damages must therefore be divided.